RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0143p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

AMERICAN COPPER & BRASS, INC., a Michigan
corporation, individually and as the representative
of a class of similarly situated persons,

  *Plaintiff-Appellee*,

  No. 13-2605

*v.*

LAKE CITY INDUSTRIAL PRODUCTS, INC. and
JEFFREY MEEDER,

  *Defendants-Appellants*.

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:09-cv-01162—Gordon J. Quist, District Judge.

Argued: June 17, 2014

Decided and Filed: July 9, 2014

Before: SILER, GILMAN, and GIBBONS, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Stephen J. Schlegel, STEPHEN J. SCHLEGEL, LTD., Chicago, Illinois, for
Appellants. Phillip A. Bock, BOCK & HATCH, LLC, Chicago, Illinois, for Appellee. **ON
BRIEF:** Stephen J. Schlegel, Eryk A. Folmer, STEPHEN J. SCHLEGEL, LTD., Chicago,
Illinois, for Appellants. Phillip A. Bock, BOCK & HATCH, LLC, Chicago, Illinois, for
Appellee.

1

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge.  In February 2006, American Copper & Brass, Inc. received an unsolicited advertisement on one of its facsimile (fax) machines for a product sold by Lake City Industrial Products, Inc.  This prompted American Copper to file a lawsuit in federal court against Lake City and its president, Jeffrey Meeder, alleging that they had violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.*, by sending American Copper an unsolicited fax advertisement.  American Copper also sought class-action certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  After extensive briefing, the district court granted class certification and subsequently granted American Copper's motion for summary judgment.

Lake City now appeals, arguing that (1) the class definition approved by the district court includes individuals who lack standing to assert TCPA claims; (2) the class is not objectively ascertainable; and (3) the district court committed reversible error by failing to apply Rule 3.501(A)(5) of the Michigan Court Rules (MCR), which prohibits class actions in TCPA lawsuits.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Lake City is a Pennsylvania-based corporation that distributes pipe-thread sealing tape. In February 2006, Lake City received an unsolicited fax from Business to Business Solutions (B2B), a "fax-blasting" company, advertising B2B's services.  *See Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 491 (7th Cir. 2013) (describing the practice of fax-blasting and noting that B2B was a notorious fax-blasting company).  Lake City's president, Jeffrey Meeder, responded to the advertisement.  B2B offered to transmit approximately 10,000 faxes on Lake City's behalf for $92.  Meeder accepted B2B's offer, and Lake City and B2B began drafting the Lake City advertisement.  After Meeder made revisions to a draft that a B2B representative had sent to him, the Lake City advertisement was finalized.  B2B

subsequently transmitted thousands of unsolicited faxes in February 2006 that featured the Lake City advertisement.

American Copper, an equipment wholesaler headquartered in Michigan, received the Lake City advertisement on a fax machine at its Traverse City location on February 20, 2006. Lake City and American Copper had no preexisting business relationship, nor did Lake City obtain American Copper's permission before the advertisement was transmitted to American Copper.

American Copper filed suit against Lake City and Meeder in December 2009. Lake City and Meeder in turn filed a third-party complaint against B2B and others affiliated with B2B. The district court entered a default judgment against the third-party defendants after they failed to appear or otherwise respond to the third-party complaint.

After amending its complaint twice, American Copper moved for class certification in August 2011. American Copper proposed the following class definition:

> All persons who were successfully sent a facsimile on February 20, 2006, February 21, 2006 or February 22, 2006 from "Lake City Industrial Products, Inc."; inquiring, "Sick And Tired of Thin, Low Quality Import Pipe Thread Sealing Tapes?"; stating "End the problems now with high quality, MADE IN U.S.A. 100% virgin ptfe pipe thread sealing tapes!"; and offering "Free! Private label on every roll for first time orders."

In support of its motion, American Copper attached a report from its expert witness, Robert Biggerstaff. The report stated that, based on Biggerstaff's review of B2B's fax records, "a total of 10,627 successful transmissions of a complete fax [i.e., the Lake City advertisement] were successfully sent to and received by 10,627 unique fax numbers."

Lake City opposed American Copper's motion for class certification, arguing among other things that MCR 3.501(A)(5) forbids the maintenance of class actions in TCPA cases. In July 2012, the district court rejected all of Lake City's arguments and certified the class as formulated by American Copper. The district court also appointed class counsel and ordered the preparation of a notification form to be sent to class members.

Lake City then petitioned this court for permission to appeal the class-certification order. *See In re Lake City Indistrial [sic] Prods. Inc.*, No. 12-0108, 2013 WL 414652 (6th Cir. Jan. 9, 2013). After concluding that interlocutory review was not warranted, this court denied Lake City's petition. *Id.* American Copper then moved for summary judgment in the district court. Lake City responded that summary judgment was inappropriate for three reasons. First, Lake City argued that it should not be held liable under the TCPA for B2B's actions. Lake City's second argument was that American Copper had failed to offer evidence regarding how many recipients had printed the Lake City advertisement. Finally, Lake City contended that the entry of summary judgment would bankrupt the company.

The district court granted American Copper's motion for summary judgment in July 2013. Explaining that the TCPA is "essentially a strict liability statute," the district court rejected Lake City's argument that it should not be held liable under the TCPA because B2B, not Lake City, had actually transmitted the Lake City advertisements. The district court was likewise unpersuaded by Lake City's contention that summary judgment was inappropriate due to the absence of proof regarding how many of the Lake City advertisements had actually been printed by recipients. Nor did the district court find any merit in Lake City's argument that summary judgment would lead to its bankruptcy, noting that Lake City's ability (or inability) to pay a judgment was irrelevant at the summary-judgment stage of the case. After the district court entered an amended judgment in favor of American Copper and the class-action plaintiffs in November 2013, this timely appeal by Lake City and Meeder followed.

## II.  ANALYSIS

### A.    Standard of review

We review a district court's decision to certify a class under the abuse-of-discretion standard. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012). Under this standard, an order certifying a class pursuant to Rule 23 of the Federal Rules of Civil Procedure is subject to "very limited review and will be reversed only if a strong showing is made that the district court clearly abused its discretion." *Id.* (internal quotation marks omitted).

By contrast, we review a district court's grant of summary judgment de novo. *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012). Summary judgment is appropriate if the record, when viewed in the light most favorable to the nonmovant, reveals that no genuine dispute of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material facts exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In reviewing a grant of summary judgment, we accept all of the nonmovant's evidence as true and draw all reasonable inferences in the nonmovant's favor. *Id.* at 255.

## B.    Class certification

Lake City attacks the class definition as purportedly encompassing "persons that may not have ever received, noticed or printed the fax but who are somehow associated with a number on the hard drive's fax logs . . . [and] further includes persons that may not be (or who were) the owners of the machines or fax number [who] may or may not have actually received [the] fax." Such persons, Lake City contends, lack standing to assert TCPA claims.

In support of its argument, Lake City cites *Machesney v. Lar-Bev of Howell, Inc.*, 292 F.R.D. 412 (E.D. Mich. 2013). The court in *Machesney* concluded that the "person or entity *that owned* the fax machine that received the unsolicited fax advertisement at issue is the [only] person or entity with standing to assert a TCPA claim." *Id.* at 428 (emphasis added). It reached this conclusion after examining the legislative history of the TCPA and finding that the statute was "intended to address . . . the cost of the paper and ink incurred by the owner of the fax machine." *Id.* at 427.

We are unpersuaded by *Machesney*'s analysis of the TCPA. For starters, the *Machesney* court had no reason to consider the legislative history of the TCPA at all. The plain language of the statute prohibits the "use [of] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). Because the language of the TCPA is clear, the district court in *Machesney* should not have waded into the legislative history. *See Roberts v. Hamer*, 655 F.3d 578, 583 (6th Cir. 2011) ("If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of

the courts to enter speculative fields in search of a different meaning.") (internal quotation marks omitted).    Recovery under the TCPA's private-right-of-action provision, moreover, is not premised on the ownership of a fax machine.  *See* 47 U.S.C. § 227(b)(3); *see also Chapman v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) (holding that ownership of a fax machine is not a prerequisite for standing under the TCPA).

And that is not the only error in *Machesney*'s analysis of the TCPA.  The *Machesney* court's conclusion that the TCPA was "intended to address . . . the cost of the paper and ink incurred by the owner of the fax machine," 292 F.R.D. at 427, is too narrow.  True, Congress was generally concerned with the costs associated with unsolicited fax advertisements.  *See id.* at 426–27 (discussing the legislative history of the TCPA).  But unsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time and impede the free flow of commerce.  *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Even a recipient who gets the fax on a computer and deletes it without printing suffers *some* loss:  the value of the time necessary to realize that the inbox has been cluttered by junk.") (emphasis in original); *Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 820 (8th Cir. 2012) (explaining that the TCPA was intended in part to "keep[ ] telephone lines from being tied up" by unsolicited fax advertisements); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 655 (8th Cir. 2003) (noting that "unsolicited fax advertising interferes with company switchboard operations and burdens the computer networks of those recipients who route incoming faxes into their electronic mail systems").    Accordingly, to the extent that Lake City relies on *Machesney* for the proposition that owners (and only owners) of fax machines have standing to sue under the TCPA, we reject Lake City's argument.

Lake City also questions the meaning of the phrase "successfully sent," a phrase that appears in the class definition.  In Lake City's view, a fax might be "successfully sent" without being received by its intended recipient.  But the evidence introduced by American Copper at the class-certification stage—which Lake City did not rebut—offers no support for this purported distinction.  Biggerstaff, American Copper's expert witness, analyzed B2B's fax records in his report.    Based on those records, Biggerstaff opined that "a total of 10,627 successful

transmissions of a complete fax were successfully sent to and received by 10,627 unique fax numbers."

Although Lake City argues that some entries in B2B's records might be erroneous, this argument is wholly speculative because Biggerstaff examined B2B's records and counted only "error-free transmissions." *Accord Ira Holtzman*, 728 F.3d at 685 (noting that the defendant had "not offered any reason to think that [the defendant's] fax machines recorded the codes inaccurately or that its software maintained the log incorrectly"). Lake City's attack on the "successfully sent" language in the class definition is therefore without merit.

We now turn to Lake City's argument that the class is not objectively ascertainable. Lake City failed to make this argument in its opposition to class certification or in its response to American Copper's motion for summary judgment, so the argument has been forfeited. *See Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993) ("In general, issues not presented to the district court but raised for the first time on appeal are not properly before the court.") (internal quotation marks and alteration omitted).

We find no reason to excuse the forfeiture in the present case, especially because the record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (determining class membership "by reference to objective criteria"); *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (commenting that notice to class members need not be perfect, but simply "the best notice that is practicable under the circumstances").

## C.    Application of MCR 3.501(A)(5)

Lake City's final argument is that the district court erred when it declined to apply MCR 3.501(A)(5), which provides that "[a]n action for a penalty or minimum amount of recovery without regard to actual damages imposed or authorized by statute may not be maintained as a class action unless the statute specifically authorizes its recovery in a class action." Because the TCPA contains a damages provision that provides for a minimum amount of recovery ($500 per violation) without regard to actual damages and because it does not specifically authorize recovery in a class action, TCPA suits cannot be maintained as class actions in Michigan state court. *Jackson's Five Star Catering, Inc. v. Beason*, No. 10-10010, 2012 WL 3205526, at *4

(E.D. Mich. July 26, 2012) (discussing the effect of MCR 3.501(A)(5) on TCPA suits in Michigan state court).

We agree with the district court's conclusion that MCR 3.501(A)(5) does not apply in this case. In *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012), the Supreme Court held that federal courts have federal-question jurisdiction over private TCPA suits. *Id.* at 747. The general rule, of course, is that the Federal Rules of Civil Procedure (including Rule 23, which governs class actions) apply to all civil cases brought in federal courts. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (holding that the "Federal Rules of Civil Procedure are the rules of practice which apply to civil actions in the federal courts, regardless of whether jurisdiction is based on federal question or diversity of citizenship").

Nevertheless, as the Fourth Circuit recognized in *In re Nguyen*, 211 F.3d 105 (4th Cir. 2000), "Congress may bypass the federal rules and require the federal courts to apply state procedure." *Id.* at 108. But this exception is a rare one. *See id.* (explaining that Congress bypasses federal procedural rules only in those "few instances where it sees fit," citing Rule 601 of the Federal Rules of Evidence (relating to the competency of witnesses to testify in civil cases involving state-law claims or defenses) as such an instance). Here, Lake City argues that the following statutory language evinces Congress's intent that state procedural rules apply in all TCPA suits:

> A person or entity may, *if otherwise permitted by the laws or rules of court of a State*, bring in an appropriate court of that State—
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.

47 U.S.C. § 227(b)(3) (emphasis added).

The better view of this state-oriented language relied on by Lake City, however, is that Congress simply intended to "enable[ ] states to decide whether and how to spend their resources on TCPA enforcement." *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 114 (2d Cir. 2013) (holding that the state-oriented language in the TCPA was intended "merely [to] permit[ ] states

to open or close their courthouse doors to TCPA claims"). We agree with the Second Circuit that the above-quoted language provides no basis to apply state procedural rules in TCPA class actions brought in federal court.

In so holding, we acknowledge Lake City's argument that allowing TCPA class-action suits to be maintained in federal district courts could lead to forum shopping. This might well be true but, as the Supreme Court recently held in a case involving a conflict between Rule 23 and a New York procedural rule prohibiting class actions in cases involving a statutory penalty, a "Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 416 (2010). We therefore reject Lake City's argument that the district court erred in declining to apply MCR 3.501(A)(5).

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.