**PALM BEACH GOLF CENTER-BOCA, INC., Plaintiff,**

v.

**John G. SARRIS, D.D.S., P.A., et al., Defendants.**

**Case No. 12–80178–CIV–WILLIAMS**

United States District Court, S.D. Florida.

Signed August 4, 2015

Entered August 5, 2015

Brian J. Wanca, Ryan Michael Kelly, Anderson + Wanca, Rolling Meadows, IL, Daniel J. Cohen, Phillip A. Bock, Tod Allen Lewis, Bock & Hatch, LLC, Chicago, IL, Leslie Mitchell Kroeger, Cohen Milstein Sellers & Toll, PLLC, Palm Beach Gardens, FL, for Plaintiff.

Eric L. Samore, Molly A. Arranz, Thomas J. Lyman, III, Smith Amundsen, LLC, Chicago, IL, William Stuart Reese, Kevin David Franz, Lane Reese Summers Ennis & Perdomo PA, Coral Gables, FL, for Defendants.

## ORDER GRANTING MOTION FOR CLASS CERTIFICATION AND SETTING STATUS CONFERENCE

KATHLEEN M. WILLIAMS, United States District Judge

**THIS MATTER** is before the Court on Plaintiff's motion to certify class (DE 20), to which Defendant filed a response in opposition (DE 28), Plaintiff filed a reply (DE 38), and Defendant filed a sur-reply (DE 48). Following an appeal, and given the passage of time, the Court requested that the parties supplement their briefing on the motion, and the parties did so (DE 112, 115, 166).

### I. BACKGROUND

Defendant John G. Sarris, D.D.S., P.A. is a Florida dental practice owned by Dr. John G. Sarris. In 2005, Mike Roberts was contacted by Business to Business Solutions ("B2B"), the d/b/a of Carol Abraham [1] to send faxes regarding Defendant's dental practice. B2B offered to send up to 10,000 fax advertisements in exchange for $420. Ultimately, B2B sent a fax containing information regarding Defendant's dental practice to various persons.

The parties do not dispute that this case has its genesis in previous class action lawsuits filed in other districts involving B2B. The history of those lawsuits and the lawsuits spawned by the actions of Ryan Kelly and Brian Wanca of Anderson & Wanca are well-known to the parties and to numerous courts throughout the country. *See Reliable Money Order, Inc. v. McKnight Sales Co.,* 704 F.3d 489 (7th Cir.2013) (summarizing events); *CE Design Ltd. v. Cy's Crabhouse N., Inc.,* No. 07 C 5456, 2010 WL 3327876 (N.D.Ill. Aug. 23, 2010) (summarizing events). Suffice it to say, in January, 2009, Anderson & Wanca came into possession of a hard drive filled with fax transmission records from Abraham. By January 13, 2009, Plaintiffs' expert, Robert Bigerstaff, had received and analyzed the data, identifying thousands of alleged fax recipients. Based on the hard drive and Biggerstaff's reports, Anderson & Wanca solicited hundreds of plaintiffs to serve as class representatives in

---

1. Ms. Abraham has been described as the "modern-day typhoid Mary" of the small business community due to the number of lawsuits generated by her services. *See Compressor Eng'g Corp. v. Mfrs. Fin. Corp.,* 292 F.R.D. 433, 436 (E.D.Mich.2013).

more than 130 lawsuits nationwide (Affidavit of Carol Abraham, DE 28–17 ¶ 7, Ex. A). In essence, Anderson & Wanca, came into possession[2] of a hard drive full of predicate information for potential class action lawsuits, retained an expert, and then—without having receiving complaints or requests for representation from any purported class members—solicited plaintiffs, many of whom, like the proposed class representative in this class action, had no recollection of receiving the faxes at issue.

After receiving one such solicitation letter, Plaintiff entered into a retainer agreement with Anderson & Wanca and another Illinois law firm, Bock & Hatch LLC, which provided for an attorneys' fee equal to one-third of any benefit conferred upon the class. (DE 28–21.) On July 9, 2009, three years and seven months after the fax at issue was sent, counsel filed three class action lawsuits alleging violations of the Telephone Consumer Protection Act ("TCPA") on behalf of Plaintiff in Florida state court, including the present lawsuit. Plaintiff did not move to certify a class until October 10, 2012, more than three years after filing suit, and nearly seven years after the transmission of the fax at issue.

Although Palm Beach Golf Center–Boca, Inc. ("Palm Beach Golf") is the Plaintiff and proposed class representative, Larry Sugarman—the owner and operator of Palm Beach Golf—testified that he did not review the complaint before it was filed and was not aware that it was a class action lawsuit. (Deposition of Larry Sugarman ("Sugarman Dep.") DE 21–5 at 26:2–7, 42:1–10.) Nor did Plaintiff have any personal knowledge of re-

ceiving the fax at issue prior to filing suit; Plaintiff's claims are predicated solely upon the Bigerstaff report[3] (Sugarman Dep. 28:7–11). The Biggerstaff report indicates that the data contained on the hard drive revealed that there was an error-free transmission of a one-page fax to 7,058 unique fax numbers on December 13 and 14, 2005. (DE 21 at 2; Expert Report of Robert Biggerstaff ("Biggerstaff Report") DE 21–4 ¶ 17, Exs. 3–6.) The Biggerstaff report indicates that Plaintiff received a successful error-free fax transmission to its fax machine at 561–347–2439[4] on December 13, 2005 (DE 21 at 6; Biggerstaff Report, Ex. 3 at 28). The report also includes a copy of a one-page fax for the Sarris dental practice that was retrieved from the hard drive. (Bigerstaff Report ¶ 12, Ex. 2.)

Plaintiff brought this action on behalf of itself and all others similarly situated against Defendants John G. Sarris, D.D.S., P.A., and John G. Sarris[5] asserting two counts: (1) violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"); and (2) common law conversion.[6] Plaintiff, the proposed class representative, is a Florida corporation, which seeks to certify the following class:

> All persons who were sent one or more facsimiles on December 13, 2005 or December 14, 2005, from "John G. Sarris, D.M.D., P.A." offering "Family, Cosmetic & Reconstructive Dentistry" and serving as a $50 "Gift Certificate."

(DE 20).

## II. LEGAL STANDARD

 Rule 23 of the Federal Rules of Civil Procedure "establishes the legal road-

---

**2.** As outlined in the Court's order granting summary judgment, proposed class counsel sent Ms. Abraham's son a check for $5,000 following his production of the hard drive with a memo-line message of "document retrieval." The check was returned to Wanca and marked void because the attorney representing Ms. Abraham's son, and Ms. Abraham herself, viewed the check as a "bribe" or an inducement. (*See* DE 103 at 5 n.7); *CE Design Ltd. v. Cy's Crabhouse N., Inc.,* No. 07 C 5456, 2010 WL 3327876, at *6 (N.D.Ill. Aug. 23, 2010).

**3.** Plaintiff testified: "I didn't see the Biggerstaff Report until I got to that—I guess that was part of that first deposition, and it's part of this deposition. So why would I bring a lawsuit for

something that I'd never seen before." (Sugarman Dep. 33:21–25). Plaintiff later clarified that he did see the Biggerstaff report and that it was the basis for the instant lawsuit (Sugarman Dep. 31:9–18). In any event, the only evidence Plaintiff has proffered to show that a fax was sent to its fax number is the Bigerstaff report.

**4.** Plaintiff no longer has this fax number (Sugarman Dep. 19:18–20).

**5.** The claims against Defendant John G. Sarris were dismissed with prejudice (DE 47).

**6.** Plaintiffs do not seek to certify a class on the conversion claim (DE 112 at n.1).

map courts must follow when determining whether class certification is appropriate." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir.2003). Rule 23 does not set forth a mere pleading standard; the party seeking class certification must affirmatively demonstrate compliance with the rule by demonstrating that "there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (emphasis in original). District courts are invested with significant discretion in deciding whether to certify a class. *See Vega v. T–Mobile USA Inc.,* 564 F.3d 1256, 1264 (11th Cir.2009). While the Court's certification analysis "may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* — U.S. —, 133 S.Ct. 1184, 1194– 95, 185 L.Ed.2d 308 (2013) (internal quotations and citations omitted). The merits of the case "may be considered to the extent— but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

█ The party seeking class certification bears the burden of establishing the propriety of class certification. *See Valley Drug,* 350 F.3d at 1187. Under Rule 23(a), every putative class must satisfy the prerequisites of numerosity, commonality, typicality and adequacy of representation. Fed. R. Civ. P. 23; *Vega,* 564 F.3d at 1265. In determining whether these prerequisites have been satisfied, the Court conducts a "rigorous analysis" of the Rule 23 requirements. *Vega,* 564 F.3d at 1266. In addition to satisfying the Rule 23(a) requirements, the party seeking certification must also show that the proposed class satisfies one of the three requirements listed in Rule 23(b). *Id.* at 1265. Failure to establish any one of the Rule 23(a) factors and at least one of the Rule 23(b) requirements precludes class certification. *See Valley Drug,* 350 F.3d at 1188.

## III. ANALYSIS

### A. Class Definition and Ascertainability

█ As a prerequisite to class certification, a plaintiff must establish that the proposed class is adequately defined and clearly ascertainable. *See Little v. T–Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir.2012); *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."). "An identifiable class exists if its members can be ascertained by reference to objective criteria. The analysis of the objective criteria also should be administratively feasible. Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Bussey v. Macon Cnty. Greyhound Park, Inc.,* 562 Fed.Appx. 782, 787–88 (11th Cir. 2014) (internal citations and quotations omitted).

Defendant argues that the proposed class is not ascertainable for two reasons. First, Defendant contends that it only authorized B2B to send faxes to certain zip codes but that B2B did not follow its instructions. Accordingly, Defendant argues that the faxes sent to numbers outside of those zip codes (or to other dental practices) should not be part of the class because Defendant is not liable for those faxes. Second, Defendant argues that the identifying information in the Biggerstaff report is out of date and extremely unreliable because, as evidenced by similar cases, it is highly likely that 33–40% of the fax numbers are no longer in use, making it difficult to locate and identify a substantial portion of the class (DE 115 at 2; 7–10).

In response, Plaintiff argues that the question of whether certain faxes were sent outside the scope of Defendant's authorization is a merits issue and that, in any event, Defendant can still be liable for faxes sent outside the scope of its authorization (DE 38 at 12).[7]

---

7. Plaintiff contends that "Courts have construed the TCPA to create liability for defendants' adver-

tisements, even when some of the faxes were potentially outside the scope of the campaign

Plaintiff also responds that although some of the fax numbers may no longer be in use, that issue goes to the ultimate identification of class members and not their ascertainability (DE 112 at 9).[8]

■ At the class certification stage, the Court does not delve into the merits of the case. Instead, the Court only determines whether class certification is appropriate. *See Amgen*, 133 S.Ct. at 1194–95; *Valley Drug*, 350 F.3d at 1188 n. 15. Because issues regarding the scope of Defendant's authorization goes to the merits of the case, the Court does not consider it at this juncture. As Plaintiff correctly notes, if the Court on an appropriate motion (or the trier of fact at trial) determines that certain of the faxes were outside the authorization of Defendant and that the Defendant cannot be liable for those transmissions, the Court can modify the class definition to comport with the evidence and exclude those transmissions. *See Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir.2000) ("Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at *any* time prior to a decision on the merits.") (emphasis in original); *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001) (stating the Court retains "the ability, and perhaps even a duty, to alter or amend a certification decision" as circumstances change); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir.2004) ("District courts are permitted to limit or modify class

definitions to provide the necessary precision."). Similarly, the Court can address any issues or due process concerns with respect to locating and notifying class members after the class is certified.

The proposed class definition here is similar to those approved by numerous courts in other B2B TCPA class actions. The majority of courts to consider the issue have concluded that such a definition, supported by a report like the Biggerstaff report prepared for this case, satisfies Rule 23's implicit ascertainability and administrative feasibility requirement. For the reasons set forth in those cases and based upon a review of the record and the Biggerstaff report, the Court finds that Plaintiff's proposed class is well-defined and ascertainable. *See, e.g., C–Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679 (S.D.Fla.2014); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12–22330–CIV, 2014 WL 7366255 (S.D.Fla. Dec. 24, 2014); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540 (6th Cir.2014); *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250 (N.D.Ill. Feb. 11, 2014); *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 191 (E.D.Pa.2014).

## B. Rule 23(a) Requirements

### 1. Numerosity

■ Under Rule 23(a), the Court first determines whether the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Al-

---

that the defendant contemplated or authorized." (DE 38 at 12). The Court does not find the two cases cited by Plaintiff persuasive as neither directly addresses the issue of imposing liability for fax transmissions that exceeded a Defendant's authorization. As the Court in *Bridgeview Health Care Ctr. v. Clark*, No. 09 C 5601, 2015 WL 1598115 (N.D.Ill. Apr. 8, 2015) noted: "[M]ore fundamentally, a rule of strict liability would lead to absurd results. To conclude that a defendant is always liable for faxes advertising her goods or services would allow an overzealous third party to expose a defendant to substantial liability without notice or without receiving any direction to do so .... an appropriate standard requires a totality-of-circumstances review, which incorporates the *Sarris* factors and other considerations including, but not limited to: the defendant's degree of input and control over the content of the faxes, the actual content of the faxes, contractual or expressly stated limitations in the scope of

control between the parties, the defendant's approval of the final draft of the faxes and their recipients, and the defendant's overall awareness of the circumstances." Nonetheless, because this question is a merits issue, the Court does not, and need not, address it now.

8. The Court finds Plaintiff's argument that it is Defendant who is to blame for any difficulties that may emerge in ultimately locating and notifying potential class members due to the passage of time to be without merit (*See* DE 112 at 10–11 [alleging that "[t]he age of this case and the success Defendant has had in delaying its resolution does not render the class unascertainable."] ). While the Court agrees that the passage of time does not make the class unascertainable, it was Plaintiff who waited nearly seven years after the fax was sent to move for class certification.

though mere allegations of numerosity are insufficient, Rule 23(a)(1) imposes a "generally low hurdle" and a plaintiff need not show the precise number of members in the class. *Vega,* 564 F.3d at 1267. While there is no bright-line rule, the "general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.' " *Manno v. Healthcare Revenue Recovery Grp., LLC,* 289 F.R.D. 674, 684 (S.D.Fla.2013) (quoting *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986)). The plaintiff must ordinarily demonstrate some evidence of the number of purported class members; mere speculation and general allegations of numerosity will not suffice. *See Walco Investments, Inc. v. Thenen,* 168 F.R.D. 315, 324 (S.D.Fla.1996); *Vega,* 564 F.3d at 1267 ("[A] plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding.").

■ Plaintiff has provided unrebutted evidence that faxes were sent to 7,058 unique fax numbers in Florida.[9] The Court finds that this evidence satisfies the numerosity requirement.

### 2. Commonality

■ While commonality and typicality are often conflated, "traditionally, commonality refers to the group characteristics of the class as a whole" whereas typicality "refers to the individual characteristics of the named plaintiff in relation to the class." *Vega,* 564 F.3d at 1275 (quoting *Piazza v. Ebsco Indus., Inc.,* 273 F.3d 1341, 1346 (11th Cir.2001)). "The commonality requirement demands only that there be 'questions of law or fact common to the class.' " *Id.* at 1268 (quoting Fed. R. Civ. P. 23(a)). For purposes of the commonality requirement, not all questions of law or fact raised by the dispute need to be common nor do common questions of law or fact need to predominate over individual issues. *Id.* Rather, under this "relatively light burden," the class action "must involve

issues that are susceptible to class-wide proof." *Id.* at 1268, 1270 (quoting *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001)). Accordingly, it is "not just the presence of common questions that matters, but the ability of the class action device to 'resolve an issue that is central to the validity of each one of the claims in one stroke.' " *Manno,* 289 F.R.D. at 685 (quoting *Dukes,* 131 S.Ct. at 2551); *see also Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir.2009) ("Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members."). Generally, the commonality requirement is met if the allegations involve a common course of conduct by the defendant. *Physicians Healthsource, Inc.,* 2014 WL 7366255, at *5.

■ This case involves common questions of fact and law, including whether the faxes constitute advertisements, and whether the faxes were sent on behalf of the Defendant. The answer to these questions is "apt to drive the resolution of the litigation." *Dukes,* 131 S.Ct. at 2551. Accordingly, the Court finds that commonality is established here. *See, e.g., Reliable Money Order, Inc. v. McKnight Sales Co.,* 281 F.R.D. 327, 333 (E.D.Wis.2012), *aff'd,* 704 F.3d 489 (7th Cir. 2013) ("*Reliable Money Order I* ) (finding that a B2B TCPA class action based satisfied the commonality requirement of Rule 23 because the events surrounding the transmission of each fax was identical); *Hawk Valley,* 301 F.R.D. at 182 (certifying B2B TCPA class action and finding that questions regarding the scope of Defendant's authority and whether B2B exceeded the scope of that authority were common questions satisfying the commonality requirement); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.,* 279 F.R.D. 442, 444 (N.D.Ohio 2012) (certifying B2B TCPA class action and finding that commonality was met because the case arose out of the defendants common conduct and because whether the fax at issue was an advertisement or whether defendant received

---

9. Defendant contends that only 2,074 of the purported recipients could be class members based on the scope of Roberts' authorization to B2B. Even if the Court were to determine that only

those zip codes designated by Roberts could be members of the class, the 2,074 transmissions would still satisfy numerosity.

express invitation or permission to fax were common questions).

### 3. Typicality

In order to satisfy the typicality requirement, a class representative must possess the same interest and suffer the same injury as the class members. *Murray,* 244 F.3d at 811. "The focus of typicality is whether the class representative's interest is aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits." *Colomar v. Mercy Hosp., Inc.,* 242 F.R.D. 671, 677 (S.D.Fla.2007). While the named representative's claims "need not be identical" to the class members' claims to satisfy typicality, there must be a " 'sufficient nexus ... between the legal claims of the named class representatives and those of individual class members to warrant class certification.' " *Ault v. Walt Disney World Co.,* 692 F.3d 1212, 1216 (11th Cir.2012) (quoting *Prado–Steiman,* 221 F.3d at 1278–79). "This nexus exists 'if the claims or defenses of the class and the class representative arises from the same event or pattern or practice and are based on the same legal theory.' " *Id.* (quoting *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984)). Consequently, "typicality is often met when, in proving her case, the representative plaintiff establishes the elements needed to prove the class members' case." *Colomar,* 242 F.R.D. at 677. The Court finds that the proposed class representative satisfies the typicality requirements because Plaintiff, like each of the class members, was purportedly sent the same fax and each class member's claim is based on the same legal theory and same set of facts as Plaintiff's claim.

### 4. Adequacy

Under Rule 23(a)(4), the representative party in a class action and his counsel "must adequately protect the interests of those he purports to represent." *Valley Drug,* 350

F.3d at 1189 (quoting *Phillips v. Klassen,* 502 F.2d 362, 365 (D.C.Cir.1974)).

### a. Adequacy of the Proposed Class Representative

The Court undertakes two separate inquiries to determine the adequacy of the class representative. First, the Court examines whether any substantial conflicts of interest exist between the representative and the class. Second, the Court asks whether the representative will adequately prosecute the action. *Id.* The principal factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 726 (11th Cir.1987) (internal quotation omitted).

Defendant argues that Plaintiff is not an adequate representative because Sugarman's testimony shows a want of credibility[10] (DE 28). Plaintiff's counsel counters that:

> Plaintiff understands its obligations and the nature of the claims in this case, plaintiff is involved in the litigation, and Plaintiff is interested in representing the class and enforcing the TCPA. Plaintiff and other class members seek statutory damages under the TCPA. There is no potential for a conflict of interest between Plaintiff and other class members given the similarity of the claims in this case. Therefore, Rule 23(a)(4)'s adequacy requirement is satisfied.

(DE 21 at 12). Plaintiff's counsel's argument is not altogether accurate; Plaintiff's deposition undeniably demonstrates Plaintiff's lack of knowledge regarding the nature of the claims asserted, the relief and damages available to him as a class member, and the specifics of the complaint he filed. And, Defendant's argument has some merit; Plaintiff's deposition testimony and discovery responses indicate some inconsistencies in his testimony, both regarding his purpose in filing, and knowledge about, the instant suit and the manner in which he and his attorneys came to find each other. For example,

**10.** Although the proposed class representative is a corporation, in determining adequacy, the Court evaluates Mr. Sugarman's role and knowledge in prosecuting this case as he is the corporation's agent. *See Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381, 1385 (11th Cir.1985) ("[A] corporation Is an artificial entity that can act only through agents.").

Plaintiff testified that he did not review the complaint before it was filed, that he did not know who the attorney who signed the complaint was, that he did not know who Robert Biggerstaff was, and that he had never heard of the Biggerstaff report [11] (Sugarman Dep. 20–29:7). Plaintiff also testified that he did not know that the instant action was a class action lawsuit (*Id.* at 42:8–10) and that he had no idea what damages he sought or what relief was available to him under the TCPA (*Id.* at 43–44). Additionally, during his deposition, Plaintiff testified:

Q: Do you know who actually sent the fax that is the subject of this lawsuit? A: You mean the individual? Q: Uh-huh: A: The person—Q: Right A:—who may have sent these. No. Ask me if I care. Q: Do you care about anybody who sent this? A: I would hope that—that the—the results of what we're going through here would have some impression on that person, and they would stop, whoever they are.

(*Id.* at 35:18–22). Moreover, Plaintiff has been less than engaged in the other lawsuits filed on his behalf:

Q: Did you ever file a lawsuit Palm Beach Golf Center versus Boca Raton Florist? A: Yes. Q: Okay what happened with that lawsuit? A: I don't know. You'd have to ask my attorney

(*Id.* at 41:16:–20).

Q: When you—the process of contacting Mr. Kelly's office, how did you know that a lawsuit was going to be filed? Did you receive a letter confirming that? A: I didn't. Q: Then what happened? What was the next step after you—A: The next step after sending all these unwanted faxes was just to sit and wait. Q: And then what happened? A: And then I got notice of the Adcab deposition. Q: That was the

first—did you even know that a lawsuit was filed on your behalf? A: I guess—you know, I may have. I don't remember the process of how that worked exactly.

(*Id.* 63:6–21).

▇ Nonetheless, the Court finds that Plaintiff has demonstrated at this juncture that he understands what the case is about, his responsibility to represent the interests of others, and that he has participated and is willing to continue to participate in the litigation of the class claims. Plaintiff has participated in the discovery process and has established that he is willing and able, through class counsel, to take an active role in the litigation and protect the interests of the class as a whole. And, as Plaintiff's counsel has explicitly stated, but for Rule 23's requirement that there be a named class representative, Plaintiff is basically irrelevant to the case. (*See* DE 38 at 2–3 ["Plaintiff's testimony is not essential to proving either Plaintiff's case or that of other class members, which will instead be established through expert testimony based on the Abraham computer data."] ).[12]

Therefore, the Court finds that any issues regarding Plaintiff's inconsistencies do not impact his ability to serve as a class representative and that he is an adequate class representative. *See City Select Auto Sales, Inc. v. David Randall Assocs., Inc.,* 296 F.R.D. 299, 316 (D.N.J.2013) (finding that plaintiff was an adequate class representative in a B2B TCPA class action even though plaintiff did not recollect the specific fax at issue and even though plaintiff only had a minimal degree of knowledge about the case); *Reliable Money Order I,* 281 F.R.D. at 334 (finding proposed class representative was adequate class representative in B2B

---

**11.** Plaintiff later clarified that he had seen the Biggerstaff report, recognized his fax number on it, and that the report formed the basis of his belief that he received a fax (Sugarman Dep. 31:9–18; 64:10–19 ["Q: Okay. So how do you know that this is a copy of the fax that was sent to you? A: I guess I don't. Q: Okay. Yet this is the fax that is attached to the complaint that you received? A: Uh-huh. Q: So you have no personal knowledge that this is the actual fax you received, so you have no basis for saying this is the fax you received? A: That is correct"] ).

**12.** At oral argument, Plaintiff's counsel stated, "we are not proving our case through Mr. Sugarman; we're proving our case through Mr. Bigerstaff and the electronic data." (DE 95, Hrg. Tr. at 21.) Defense counsel concurred, saying Sugarman "admittedly has no evidence, zero, besides what the plaintiff's attorneys have provided." (Hrg. Tr. at 37.)

TCPA class action despite evidence that plaintiff had no independent knowledge of the allegations in the complaint given the "low standard" applied in the adequacy analysis).

### b. Adequacy of Class Counsel

Defendant also argues that the proposed class counsel is inadequate due to their misconduct in obtaining the hard drive and due to their solicitation of the Plaintiff in this case. In moving for class certification, Plaintiff submitted resumes for both Bock & Hatch, LLC and Anderson & Wanca. While Plaintiff's counsel is correct that Courts have largely rejected the argument that Anderson & Wanca are inadequate as class counsel based on misconduct (*see* DE 38 at 3), courts have not done so without hesitation, uniformly expressing significant reservations about counsel's conduct. The Court need not repeat the allegations made against Mr. Kelly and his firm in detai, but courts throughout the country have described their actions as: "distress[ing]" and "questionable conduct" [13]; "demonstrat[ing] a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class" [14]; "not entirely on the up and up" [15]; "at best, clumsy" [16]; "misleading" [17]; and "ill-considered." [18]

■■■ Despite articulating these concerns, many courts have nonetheless found that the proposed class counsel adequate because, as one court noted, "there is no doubt that Bock & Hatch and Anderson + Wanca, for better or worse, have experience in TCPA class actions." *Am. Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, No. 1:09–CV–1162, 2012 WL 3027953, at *7 (W.D.Mich. July 24, 2012) *aff'd*, 757 F.3d 540 (6th Cir. 2014). The Court notes that at the May 22, 2015, hearing, Mr. Bock represented that his firm would be taking the lead as class counsel and not Mr. Kelly's firm (DE 111, Hrg. Trans at 3:7–17). Accordingly, the Court finds that on these facts, Mr. Bock and his firm will adequately prosecute the interests of the class and are qualified to serve as class counsel.[19]

### C. Rule 23(b) Requirements

In addition to establishing the requirements of Rule 23(a), a plaintiff seeking class certification must also establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b). *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir.2012). Plaintiff moves for class certification under Rule 23(b)(3), which provides that a class may be certified if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effi-

---

**13.** *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 500 (7th Cir.2013).

**14.** *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir.2011).

**15.** *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, No. 07 C 5456, 2010 WL 2365162, at *6 (N.D.Ill. June 11, 2010) (stating that "[t]he Court is, however, troubled by the conduct of ... counsel and intends to hold a further hearing to determine how the materials from B2B have been used and the rationale supporting such use.").

**16.** *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 319 (D.N.J.2013) (noting that the solicitation letter could merit further review before permitting *pro hac vice* admission if it were sought).

**17.** *Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, No. 09 C 3963, 2012 WL 3961307, at *3 (N.D.Ill. Sept. 10, 2012).

**18.** *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, No. 1:09–CV–1162, 2012 WL 3027953, at *7 (W.D.Mich. July 24, 2012) *aff'd*, 757 F.3d 540 (6th Cir.2014).

**19.** As another court noted, "[w]hatever this Court's opinion of counsel's behavior might be (and whatever this Court may think about the statute at issue in this case), the inquiry required by Rule 23(a)(4) is whether it ... appear[s] that the representatives will vigorously prosecute the interests of the class through qualified counsel. On the facts relevant to this inquiry, the Court is persuaded that Plaintiffs counsel will prosecute this case in the interest of the class." *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10–CV–253, 2012 WL 4127824, at *8 (W.D.Mich. Sept. 19, 2012) (granting class certification involving the same class counsel in a B2B TCPA case).

ciently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

 "To obtain Rule 23(b)(3) class certification, 'the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole must predominate over those issues that are subject only to individualized proof.'" *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir.2009) (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1557–58 (11th Cir. 1989)). Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to relief. *Id.* If plaintiffs must present a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their claims, certification under Rule 23(b)(3) is inappropriate. *Id.* The Court examines the claims, defenses, relevant facts, and applicable substantive law in order to assess the degree to which resolution of the class-wide issues will further each individual class member's claim. *Id.*

 In this case, the Court finds that common issues predominate over any individual issues that may arise. The facts necessary to establish liability relate to Defendant's common course of conduct and the transmissions of the faxes, and not to issues with individual class members. *See Reliable Money Order I*, 281 F.R.D. at 338. And, the class members' claims are brought under the same federal statute and based on the same legal theories. Consequently, the Court finds that common issues predominate over any individual issues that may arise.[20]

### 2. Superiority

 The focus of the superiority analysis is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir.2004). Consequently, the predominance analysis has a "tremendous impact on the superiority analysis ... for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Id.* Rule 23(b) sets forth four specific, albeit non-exclusive, considerations, pertinent to this analysis: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b); *Vega*, 564 F.3d at 1277.

 Given the large number of purported members in this suit and the similarity of their claims, disposition by class action is an efficient use of judicial resources. Moreover, the relatively small potential recovery in individual actions ($500 in the absence of a finding of willfulness) and reduced likelihood that plaintiffs will bring suit also weighs in favor of class resolution. Further, all of the faxes at issue were sent to Florida-specific zip codes and the prevalence of class-wide issues suggests that a class action would be the superior method. *See Savanna Grp., Inc. v. Trynex, Inc.*, No. 10–CV–7995, 2013 WL 66181, at *16 (N.D.Ill. Jan. 4, 2013); *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744, at *6 (N.D.Ill. Sept. 30, 2011); *Reliable I*, 281 F.R.D. at 339. In light of these factors, the Court finds that a class action is superior to other methods for adjudicating the putative class members TCPA claims.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification (DE 20) is

---

20. The Court agrees with the Court in *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 338 (E.D.Wis.2012), *aff'd*, 704 F.3d 489 (7th Cir.2013), that any issues relating to whether any of the recipients gave permission to receive faxes prior to transmission or whether any of the plaintiffs had an established business relationship with the defendant can be handled within the framework of a class action. And as the Court has noted, as these issues are resolved, the Court may modify the class definition as necessary. *See, e.g., Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir.2000),

**GRANTED.** It is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's claim against Defendant John G. Sarris, D.D.S., P.A. in the second amended complaint is certified as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

2. The following class is hereby certified: All persons who were sent one or more facsimiles on December 13, 2005 or December 14, 2005, from "John G. Sarris, D.M.D., P.A." offering "Family, Cosmetic & Reconstructive Dentistry" and serving as a $50 "Gift Certificate."

3. Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure Phillip A. Bock, Esq., and the law firm of Bock & Hatch, LLC are hereby appointed as class counsel.

4. Plaintiff Palm Beach Golf Center–Boca, Inc., is hereby approved as class representative.

5. A telephonic status conference is hereby set for Thursday, **August 27, 2015 at 3:30 p.m.** Chambers will e-mail dial-in information to counsel of record prior to the conference.

**DONE AND ORDERED** in chambers in Miami, Florida, this *4th* day of August, 2015.