John HERRICK and Tess Corey, individually and as the representatives of a class of similarly-situated persons, Plaintiffs,

v.

QLESS, INC., Defendant.

Case No. 15-cv-14092

United States District Court, E.D. Michigan, Southern Division.

Signed 10/26/2016

Julia L. Titolo, Tod A. Lewis, Phillip A. Bock, Bock, Hatch, Lewis & Oppenheim, LLC, Chicago, IL, Mark K. Wasvary,

Becker and Wasvary, Troy, MI, for Plaintiffs.

Evelyn C. Lopez, Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo PC, Los Angeles, CA, Robert E. Murkowski, Todd A. Holleman, Miller Canfield Paddock & Stone PLC, Detroit, MI, for Defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT [12]

JUDITH E. LEVY, United States District Judge

Plaintiffs John Herrick and Tess Corey bring a purported class action alleging that defendant QLess, Inc., violated the Telephone· Consumer Protection Act when it sent them certain text messages without prior written consent. Defendant essentially argues that only oral consent was necessary because the texts were not for advertising or telemarketing purposes. Because the texts constituted advertising or telemarketing under the TCPA, defendant's motion is denied.

## I. Background

Plaintiffs John Herrick and Tess Corey bring this case on behalf of themselves and a purported class of similarly situated individuals. The following background is drawn from the amended complaint. (Dkt. 10.)

Defendant QLess, Inc., contracts with retail, healthcare, and municipal organizations to send wait-time updates to customer cellphones so that those customers need not wait at the business locations. (*Id.* at 4.)

In November 2015, plaintiff John Herrick went to the Secretary of State's office in Troy, MI, and an employee "asked him for his cellphone number without identifying the reason for such a request." (*Id.* at 5.) He "complied and thereafter was instructed that he would receive an update of his wait time by text message." (*Id.*) According to plaintiff Herrick, he "did not expressly consent to receive text messages from [d]efendant, and certainly did not consent to receive [d]efendant's advertisements by text message."

Plaintiff Herrick received a text from defendant that read as follows: "Android users: Try our QLess app to see your wait in real time, control when you get served & find more places with no lines—http://tiny.qless.com/androidApp." (*Id.* at 6.) When his wait was over, he received another text, which read as follows: "You have reached the front of the line! Please proceed to Window 1. Thanks for waiting!—http:/QLess.com." (*Id.*)

In February 2016, plaintiff Tess Corey entered a restaurant ("Datz") in Tampa, FL, and the host requested her cellphone number. (*Id.* at 5.) She "complied and thereafter was instructed that she would receive an update of her wait time by text message." (*Id.*) She received substantively the same text messages that plaintiff Herrick received. (*Id.* at 7.)

Plaintiffs bring only one claim, for violation of the TCPA, 47 U.S.C. § 227 *et seq.* According to plaintiffs, the text messages constituted advertisement or telemarketing, and thus required "prior express, written consent." (*See* Dkt. 10 at 5-6, 12-13.)

Defendant filed a motion to dismiss, raising the following arguments. First, the text messages are not telemarketing, and thus only oral consent was required, which named plaintiffs gave by voluntarily giving their cellphone numbers to the Secretary of State and Datz. (Dkt. 12 at 19-23.) The main reason these messages are not telemarketing, according to defendant, is that they only alerted plaintiffs to a free app and other information related to the services, not something plaintiffs would pay for. (*Id.*) Second, plaintiffs lack standing

because they fail to plead that they had a concrete injury. (*Id.* at 23-25.)

## II. Standard

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

## III. Analysis

■ First, the named plaintiffs have standing to bring their claim. Plaintiffs allege that the text messages "diminish[ed] batter[y] life, waste[d] data storage capacity, and [we]re an intrusion upon privacy and seclusion." (Dkt. 10 at 3.) Defendant argued at the hearing that plaintiffs suffered only *de minimus* injuries that do not rise to the level of a concrete injury, citing an unreported case from California. *See Smith v. Aitima Med. Equip., Inc.*, No. ED CV 16–00339–AB (DTBx), 2016 WL 4618780, at *4–5 (C.D. Cal. July 29, 2016) (holding that drainage of battery life from two text messages "not sufficient to confer standing").

But this Court is bound by the Sixth Circuit Court of Appeals, which holds that the receipt of an unsolicited advertising or telemarketing message is itself a concrete injury for the purposes of the TCPA because such messages "waste the recipients' time and impede the free flow of com-

merce." *See Am. Copper & Brass, Inc. v. Lake City Indus. Prods.*, 757 F.3d 540, 544 (6th Cir. 2014) ("[U]nsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time and impede the free flow of commerce.") (citing cases from the Seventh and Eighth Circuit Courts of Appeals). Plaintiffs have alleged a concrete harm and have standing to bring their claim.

■ The TCPA makes it unlawful for any person to place a call "using any automatic telephone dialing system or an artificial or prerecorded voice" to a cellphone number without obtaining the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). This applies to text messages as well. *Keating v. Peterson's Nelnet, LLC*, 615 Fed.Appx. 365, 371 (6th Cir. 2015). To state a claim, plaintiffs must allege sufficient facts to show: (1) defendant sent them a text message; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. The only dispute for the purposes of this motion is whether defendant had plaintiffs' prior express consent.

Since October 2013, the Federal Communications Commission has required "prior express *written* consent" for any text "that includes or introduces an advertisement or constitutes telemarketing." 47 C.F.R. § 64.1200(a)(2) (emphasis added). The term advertisement "means any material advertising the commercial availability or quality of any property, goods, or services," and "[t]he term telemarketing means the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. §§ 227(a)(4), (a)(5); *see* 47 C.F.R. §§ 64.1200(f)(1), (f)(12).

■ The issue is whether the text messages that were sent constitute advertising or telemarketing. The parties agree that there was no express written consent. So if the text messages constitute telemarketing or advertising, plaintiffs have alleged a violation of the TCPA.

Defendant argues that because "the text messages at issue are not intended to encourage [p]laintiffs to *purchase* property, goods, or services from QLess," but only inform them that "they could download the QLess smartphone application for free," the text was a non-telemarketing information text. (Dkt. 12 at 18-19.) Plaintiffs respond that the QLess texts are not "purely information" since they contain links to the QLess website promoting its services and smartphone "app," and also the TCPA "does not require that a text encourage the recipient to make a purchase in order to constitute advertising or telemarketing." (Dkt. 15 at 18-23.) Defendant replies that in "the Sixth Circuit it is well settled that a communication is not an advertisement when it does not promote goods or services to be bought or sold by the recipient." (Dkt. 16 at 2-3 (citing *Sandusky Wellness Center v. Medco Health Solutions*, 788 F.3d 218, 222 (6th Cir. 2015)).)

Defendant seems to conflate "telemarketing" and "advertisement." For example, defendant argues that the link provided in its text message "is not advertising the purchase of the QLess app." (Dkt. 12 at 21 n.8.) But the act prohibits a text that is "advertisement *or* constitutes telemarketing." 47 C.F.R. § 64.1200(a)(2) (emphasis added). And although telemarking in this case would be defined as "for the purpose of encouraging the *purchase*" of an app or service, advertisement in a text is defined as "any material advertising the commercial availability *or* quality" of an app or service. *See* 47 U.S.C. §§ 227(a)(4), (a)(5) (emphasis added); 47 C.F.R. §§ 64.1200(f)(1), (f)(12). Relatedly, the

FCC deems faxes that "promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars" to be advertisements under the TCPA. 21 FCC Rcd. 3787, 3814 (2006); *see Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F.Supp.2d 272, 282-83 (S.D.N.Y. 2013).

Here, the Court need not "presume that such message describe the 'quality of any property, goods, or services,'" as the FCC did in its reasoning. 21 FCC Rcd. 3787, 3814 (2006) (quoting 47 U.S.C. § 227(a)(4)). Defendant makes the argument explicit. The text message promoted the QLess app by stating the app would allow plaintiffs to "control when [they] get served & find more places with no lines." (Dkt. 10 at 6.) And defendant argues that the "app gives users more fine-grained control over their waiting experience, including being able to see their forecast and position in the queue change in real-time, instead of having to text in 'S' for status updates, like Mr. Herrick did." (Dkt. 12 at 21 n.8.) Defendant is "advertising the ... quality" of its app. *See* 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(12).

■ Moreover, "the fact that the recipient of the [text] is not the one paying for the product does not make the proposed transaction noncommercial." *Bais Yaakov of Spring Valley*, 936 F.Supp.2d at 283; *see, e.g., Physicians Healthsource, Inc. v. Stryker Sales Corp.*, No. 1:12–CV–0729, 65 F.Supp.3d 482, 2014 U.S. Dist. LEXIS 175425 (W.D. Mich. Dec. 12, 2014) ("We know from common experience—whether at time-share resorts or otherwise—that 'free offers' often come with strings attached.").

Defendant cites to *Sandusky Wellness Ctr. v. Medco Health Solutions*, 788 F.3d 218 (6th Cir. 2015). There, the Sixth Circuit held that the TCPA was not violated because defendant sent a fax but the fax

was "not sent with hopes to make a profit, directly or indirectly, from [plaintiffs]." *Id.* at 221–22. "To be an ad, the fax must promote goods or services that are for sale, and the sender must have profit as an aim." *Id.* at 224. In contrast, the link provided in the QLess text message leads to a page that alerts the customer "[i]f you know a business that has long waits and doesn't show up in QLess yet, visit http://qless.com/L to find out how you can help bring QLess there."

Unlike the plaintiffs in *Sandusky*, QLess sent the texts "with the hopes to make a profit, ... indirectly, from [plaintiffs]" *cf. Sandusky*, 788 F.3d at 222, by having plaintiffs work to assist defendant with identifying companies to whom defendant could sell its services. Profit is obviously defendant's "aim." *Id.* at 224; *see, e.g., id.* at 222 ("Readers understand that .... when an orthopedic implant manufacturer sends potential buyers a fax containing a picture of its product on an invitation to a free seminar: It is drawing the relevant market's attention to its product to promote its sale (albeit indirectly).") (citing cases).

Taking plaintiffs' allegations as true, defendant advertised a "free" app for the purpose of conveying the quality of its products and services and soliciting plaintiffs to recruit more business customers. Defendant did so without plaintiffs' express written consent. Plaintiffs have sufficiently stated their claim, and defendant's motion to dismiss is denied.

## IV. Conclusion

Defendant's motion to dismiss (Dkt. 12) is DENIED.

IT IS SO ORDERED.