In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 14-8004

ARNOLD CHAPMAN and PALDO SIGN & DISPLAY COMPANY,
  individually and as representatives of a class of similarly
  situated persons,

*Plaintiffs-Respondents*,

*v.*

WAGENER EQUITIES, INC. and DANIEL WAGENER,

*Defendants-Petitioners*.

———————————

Petition for Leave to Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 7299 — **John J. Tharp, Jr.**, *Judge*.

———————————

SUBMITTED MARCH 19, 2014 — DECIDED MARCH 31, 2014

———————————

Before POSNER, KANNE, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendants in this class action suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, seek our leave to appeal from the district court's order certifying the class. Fed. R. Civ. P. 23(f). The defendants are a business that manages commercial real estate properties for the properties' owners, and the owner of

the business. The suit charges the defendants with having paid a "fax blaster" called Business to Business Solutions to send unsolicited fax advertisements, in violation of the Act's "junk fax" prohibition, 47 U.S.C. § 227(b)(1)(C), to 10,145 persons. They are the members of the class. Class counsel is seeking statutory damages, as they would surely eclipse any actual damages if the entire class is determined to have been victimized by the defendants' fax campaign. For then the aggregate statutory damages will be either a little more than $5 million or, if the violation is determined to be willful or knowing, as much as three times greater. § 227(b)(3).

If the expected damages are so great in relation to the defendants' assets that if the class certification order stands, the defendants may well be forced—even if they have a strong case on the merits—to settle, in order to avoid the risk of a catastrophic judgment, we would give careful consideration to the request for leave to appeal the order. *Kohen v. Pacific Investment Management Co.*, 571 F.3d 672, 677–78 (7th Cir. 2009); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 834–35 (7th Cir. 1999). But the defendants haven't told us what their assets are—just that the corporate defendant is "a small family owned business." It is no doubt small in relation to such family-owned businesses as Koch Industries and Walmart, but maybe not so small that a contingent liability of $15 million would force it to settle; it hasn't settled yet, and this suit will be celebrating its fifth birthday later this year.

Even if the defendants could prove that they'll be forced to settle unless we reverse the class certification order, they would have to demonstrate a significant probability that the order was erroneous. "However dramatic the effect of the grant or denial of class status in … inducing the defendant to

capitulate, if the ruling is impervious to revision there's no point to an interlocutory appeal." *Id.* at 835.

The defendants' principal argument is that only owners of fax machines have standing to sue under the Telephone Consumer Protection Act. The plaintiffs have not presented evidence concerning the ownership of the fax machines of the class members. But what the Act prohibits is faxing unsolicited fax advertisements "to a telephone facsimile machine." § 227(b)(1)(C). There is no mention of ownership.

The defendants cite a district court decision that read an ownership requirement into the Act on the ground that Congress's concern was with the "cost of the paper and ink incurred by the owner of the fax machine and the fax machine owner's loss of the use of the machine." *Compressor Engineering Corp. v. Manufacturers Financial Corp.*, 292 F.R.D. 433, 448 (E.D. Mich. 2013). The decision is erroneous on its own terms, because the lessee of a fax machine pays for the paper and often for the ink. And if he doesn't, no matter. For contrary to *Compressor Engineering*, our decision in *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), holds that no monetary loss need be shown to entitle the junk-fax recipient to statutory damages. Whether or not the user of the fax machine is an owner, he may be annoyed, distracted, or otherwise inconvenienced if his use of the machine is interrupted by unsolicited faxes to it, or if the machine wears out prematurely because of overuse attributable to junk faxes. Nor does entitlement to statutory damages require any showing of injury of any sort, for such damages not only serve to compensate for injuries difficult to estimate in dollar terms, but also, like statutory compensation for whistleblowers, operate as bounties, increasing the incentives for private en-

forcement of law. Anyway it would be arbitrary to limit re-
lief under the junk-fax provision of the Telephone Consumer
Protect Act to owners of fax machines, and there is no sug-
gestion of such a limitation in the statute.

At most the defendants' argument would support adding
to the class the owners, if different from the users, of the fax
machines that received the unauthorized fax advertisements.
There is no doubt that many of the current class members do
own their fax machines. The defendants don't deny that one
of the named plaintiffs, Paldo Sign & Display Company,
does; but the other, Chapman, appears to as well. It's true
that he was a federal prisoner when the defendants' fax was
transmitted to the fax machine in his home, but that should
make no difference, on the defendants' own theory, to his
eligibility to be a member of the class, and indeed to be a
class representative (though, embarrassed by Chapman's
situation, class counsel has dropped him as a class repre-
sentative; but he remains a member of the class). It's irrele-
vant that, being in prison, he couldn't use the machine. (His
wife received the defendants' faxes while he was impris-
oned.)

Anyway a class can be certified without determination of
its size, so long as it's reasonable to believe it large enough to
make joinder impracticable and thus justify a class action
suit. *Kohen v. Pacific Investment Management Co.*, *supra*, 571
F.3d at 677–78. "How many (if any) of the class members
have a valid claim is the issue to be determined *after* the class
is certified." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th
Cir. 2014) (emphasis in original). Recipients of faxes who
don't have rights under the Telephone Consumer Protection

Act just wouldn't be entitled to share in the damages awarded to the class by a judgment or settlement.

Which goes to show that the defendants' argument about ownership is not really addressed to the appropriateness of class certification, and so doesn't belong in this appeal. The argument is not that a class should not have been certified but that some persons or firms have been mistakenly included in it. If the argument had merit (it doesn't), it would merely encourage the district judge to create subclasses, one of which (the owner subclass) could win while the lessee subclass lost.

The defendants make an unrelated argument involving plaintiff Paldo—that our decision in *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011), makes Paldo an inadequate class representative. As we pointed out in that case, there is no violation of the Telephone Consumer Protection Act if the recipient of the fax advertisement had given the defendant "prior express invitation or permission, in writing or otherwise," to receive such advertisements from the defendant. 47 U.S.C. § 227(a)(5). The plaintiff, CE, a small civil engineering firm, had posted its fax number on its website and next to it the phrase "Contact Us." It had also signed a form that both authorized the publication of its fax number in the *Blue Book of Building and Construction*—a directory similar to the Yellow Pages but aimed at firms in the building industry—and authorized the other subscribers to the *Blue Book*, such as defendant King, to "communicate" with it, including via fax. The *Blue Book* states that "by supplying The Blue Book with your fax and e-mail address, you agree to have The Blue Book and users of The Blue Book services communicate with you via fax or e-mail." Given this

and other evidence discussed in our opinion, we concluded that King might have a good defense under the Act. 637 F.3d at 725–28. This case is different. Paldo's fax number was published in the *Blue Book* without its consent. Employees of the directory found the number and "free listed" it—that is, published it in the *Blue Book* without Paldo's authorizing or paying for the listing.

So Paldo's adequacy as a class representative has not been impugned. We need not speculate on whether the defendants might seek contribution from the *Blue Book* company to the damages they may be forced to pay to the class, on the ground that the company misled the defendants into thinking that Paldo had consented to receive fax advertisements. Nor is there any suggestion that other members of the class consented to receive fax advertisements from the defendants.

The defendants argue that class counsel should be disqualified from representing the plaintiffs and the class for having acted unethically by sending the defendants a class-action notice. See *Creative Montessori Learning Centers v. Ashford Gear, LLC*, 662 F.3d 913, 916–18 (7th Cir. 2011). This would have been unethical conduct if the purpose of the notice had been to enlist the defendants in a class action suit *as members of the plaintiff class*. For that would put them on both sides of the case—thus suing themselves! But actually the notice was of another junk-fax suit, not this one, so there was no ethical violation—and for the further reason that a court order required the sending of that notice to all possible class members, which happened to include the defendants in the present case.

It remains only to note the age of this case. It is in its fifth year, and still at the certification stage, with trial not scheduled to begin until January 12, 2015. It's not a complicated case. Rather, the delay in moving it toward completion reflects poor case management. The case has been reassigned twice, and thus has been overseen by three different judges in succession. More than two and a half years elapsed between the initial briefing on certification and the decision to certify. The plaintiffs' counsel failed to appear for two status conferences before a magistrate judge assigned to the case (the fourth judicial officer) and defense counsel skipped one status conference. The plaintiffs had to be compelled (a matter taking months) to answer interrogatories. One of the plaintiffs' witnesses failed to show up to two subpoenaed depositions, requiring the defendants to seek an order to show cause in the District of Massachusetts.

A rapid resolution of this case is in order. But as the proposed appeal has no merit, the petition for leave to appeal under Fed. R. Civ. P. 23(f) is

DENIED.