# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 15-1317

———————————————————

Sandusky Wellness Center, LLC, an Ohio limited liability company, individually
and as the representative of a class of similarly situated persons

*Plaintiff - Appellant*

v.

Medtox Scientific, Inc.; Medtox Laboratories, Inc.; John Does 1-10

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: November 18, 2015
Filed: May 3, 2016

——————————

Before SMITH, BYE, and BENTON, Circuit Judges.[1]

——————————

BENTON, Circuit Judge.

Sandusky Wellness Center, LLC, received an unsolicited fax from MedTox
Laboratories, Inc. Sandusky brought a class action under the Telephone Consumer

---

[1]This opinion is being filed by Judge Smith and Judge Benton pursuant to 8th
Cir. Rule 47E.

Protection Act (TCPA). The district court denied class certification, finding the class not ascertainable. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

In February 2012, MedTox, a toxicology lab, decided to contact pediatricians, family practitioners, health departments, and child-focused organizations about its lead-testing capabilities. Using a directory from a health insurance company, MedTox created a contact list of 4,210 fax numbers. Between February 18 and 26, MedTox successfully transmitted a single-page fax to 3,256 numbers, including Sandusky's number.

Sandusky is a chiropractic center owned by Dr. Gregg D. Winnestaffer, a chiropractor. Sandusky's name is not on the contact list. Rather, Dr. Bruce Montgomery—who worked one day a week at the center—is on the contact list. Dr. Montgomery, a family practitioner, occasionally required lead-testing for patients. Dr. Montgomery did give Sandusky's fax number to the health insurance company, which gave it to MedTox. MedTox's fax to Sandusky's number was not addressed to anyone and had no opt-out notice. Dr. Winnestaffer forwarded the fax to Sandusky's counsel, who filed this case.

In April 2014, Sandusky moved to certify as a TCPA class: "All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages regarding lead testing services by or on behalf of Medtox, and (3) which did not display a proper opt out notice."

The district court denied class certification, holding the class was "not ascertainable, because it does not objectively establish who is included in the class." Both parties moved for summary judgment. Sandusky requested a $500 judgment and

an injunction prohibiting MedTox from sending unsolicited faxes to Sandusky. MedTox argued that a settlement offer—$3,500 and a promise not to send more faxes—mooted Sandusky's claim. The district court granted summary judgment to MedTox, holding its offer mooted Sandusky's entire demand. Sandusky appeals the denial of class certification, the order dismissing its case as moot, and the final judgment for MedTox.

## II.

This court reviews a denial of class certification for abuse of discretion. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010). A district court abuses its discretion if, as relevant here, it commits an error of law. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011).

Federal Rule of Civil Procedure 23(a) "sets out four threshold requirements that must be met before a plaintiff may file a lawsuit on behalf of a class of persons. Once those prerequisites have been met, the plaintiff must also establish that the class fits within one of three types of class actions listed in Rule 23(b)." *Avritt*, 615 F.3d at 1029. The district court did not discuss the four requirements at length because: "Before considering the explicit requirements set forth in Rule 23 . . . the court must be satisfied that the proposed class is ascertainable." *Sandusky Wellness Center LLC v. Medtox Scientific, Inc.*, 2014 WL 3846037, *3 (D. Minn. Aug. 5, 2014).

## A.

Most of the other circuit courts of appeals have "recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable' . . . . an 'ascertainability' requirement." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). *See, e.g.*, *In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015) ("[T]he definition of the class must be 'definite,' that is, the

standards must allow the class members to be ascertainable."); ***Brecher v. Republic of Argentina***, 806 F.3d 22, 24 (2d Cir. 2015) ("Like our sister Circuits, we have recognized an 'implied requirement of ascertainability' in Rule 23"); ***Marcus v. BMW of North America, LLC***, 687 F.3d 583, 592-93 (3d Cir. 2012) ("[A]n essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable"); ***Union Asset Management Holding A.G. v. Dell, Inc.***, 669 F.3d 632, 639 (5th Cir. 2012) ("[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."); ***Rikos v. Procter & Gamble Co.***, 799 F.3d 497, 525 (6th Cir. 2015) (discussing "the ascertainability inquiry"); ***Mullins v. Direct Digital, LLC***, 795 F.3d 654, 659 (7th Cir. 2015) (stating that a "'weak' version of ascertainability has long been the law in this circuit."); ***Berger v. Home Depot USA, Inc.***, 741 F.3d 1061, 1071 n.3 (9th Cir. 2014) (mentioning a "threshold ascertainability test"); ***Little v. T-Mobile USA, Inc.***, 691 F.3d 1302, 1304 (11th Cir. 2012) ("Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'").

The circuits diverge on the meaning of ascertainability. The Third Circuit has a heightened test for ascertainability, which the Seventh Circuit expressly rejects. The Third Circuit states that a "plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." ***Byrd v. Aaron's Inc.***, 784 F.3d 154, 163 (3d Cir. 2015). "The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" ***Id.*** (Applying that standard, owners and lessees of computers with activated spyware were an ascertainable class due to "'objective records' that can 'readily identify' these class members"). *See also* ***Brecher***, 806 F.3d at 24 (clarifying that "the touchstone of ascertainability is whether the class is 'sufficiently definite so that it is

administratively feasible for the court to determine whether a particular individual is a member.'"); ***Karhu v. Vital Pharm., Inc.***, 621 Fed. Appx. 945, 947 (11th Cir. 2015) ("In order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified.").

Rejecting the Third Circuit's heightened standard, the Seventh Circuit says: "Nothing in Rule 23 mentions or implies this heightened requirement under Rule 23(b)(3) . . . . The policy concerns motivating the heightened ascertainability requirement are better addressed by applying carefully the explicit requirements of Rule 23(a) and especially (b)(3)." ***Mullins***, 795 F.3d at 658. According to the Seventh Circuit, a heightened ascertainability requirement "gives one factor in the balance absolute priority, with the effect of barring class actions where class treatment is often most needed: in cases involving relatively low-cost goods or services, where consumers are unlikely to have documentary proof of purchase." ***Id.*** *See also **id.*** at 672 (rejecting the Third Circuit's second requirement of an "administratively feasible mechanism" for determining class members), *criticizing **Carrera v. Bayer Corp.***, 727 F.3d 300, 304 (3d Cir. 2013) (finding a class not ascertainable because the only way to identify members was "retailer records of online sales and sales made with . . . rewards cards" or "by affidavits of class members, attesting they purchased WeightSmart"). Affirming the class certification in *Mullins*, the Seventh Circuit held the class was "not vague," "not based on subjective criteria," and did identify "a particular group of individuals . . . harmed in a particular way . . . during a specific period in particular areas." ***Id.*** at 660-61. The court so held even assuming there were "no records for a large number of retail customers" and that consumers were "unlikely to have kept their receipts." ***Id.*** at 661. *See also **Rikos***, 799 F.3d at 525 (explaining that for "a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.").

This court, unlike most other courts of appeals, has not outlined a requirement of ascertainability. "It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." ***Ihrke v. N. States Power Co.***, 459 F.2d 566, 573 n.3 (8th Cir.) (noting "that the membership of the subclass (persons who because of their poverty are unable to pay for utility services), would be impossible to determine because of the vagueness of its description"), *vacated due to mootness*, 409 U.S. 815 (1972). Since *Ihrke*, this court has not addressed ascertainability as a separate, preliminary requirement. Rather, this court adheres to a rigorous analysis of the Rule 23 requirements, which includes that a class "must be adequately defined and clearly ascertainable."

B.

Sandusky's class definition includes: "All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages regarding lead testing services by or on behalf of Medtox, and (3) which did not display a proper opt out notice." Fax logs show the numbers that received faxes. Even so, the district court concluded that the class was not ascertainable because it would have to conduct individualized inquiries to determine which class members were injured under the TCPA. MedTox advocates a heightened ascertainability standard but asserts that, under any standard, the class is not ascertainable.

The TCPA prohibits the "use [of] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" if "the recipient is within the United States." **47 U.S.C. § 227(b)(1)(C)**. "A person or entity may . . . bring . . . (A) an action based on a violation of this subsection or the regulations prescribed . . . to enjoin such violation, (B) an action to recover for actual monetary loss . . . or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions." **§ 227(b)(3)**. The plain language of the statute—allowing damages "for each such

violation"—authorizes statutory damages for each sending of an unsolicited fax advertisement. *See **Creative Montessori Learning Ctrs. v. Ashford Gear LLC***, 662 F.3d 913, 914 (7th Cir. 2011) ("The Act imposes, on anyone who sends an unsolicited fax advertisement, statutory damages of $500 *per fax*, which can be trebled if the court finds that the violation was willful or knowing") (emphasis added).

MedTox urges that—despite the fax logs—there is no possible way to objectively ascertain the class in this case. Sandusky's definition of the class includes all persons who "were sent" the faxes. MedTox believes that, by this definition, the class cannot be ascertained because multiple persons may claim injury for each fax: the subscriber to the fax number, the owner of the fax machine, (perhaps) a lessee of the fax machine, or any user disrupted by the fax. *But cf. **Chapman v. Wagener Equities, Inc.***, 747 F.3d 489, 492 (7th Cir. 2014) (noting that the TCPA does not require ownership of the fax machine but adding "[t]here is no doubt that many of the current class members do own their fax machines.").

The TCPA prohibits sending an unsolicited fax advertisement to a "recipient." **§ 227(b)(1)** (six references to "recipient"). The TCPA does mention the "telephone facsimile machine" but the "recipient" is not the machine, nor is it necessarily the person or entity that owns the machine. *See **American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.***, 757 F.3d 540, 544 (6th Cir. 2014) ("Recovery under the TCPA's private-right-of-action provision . . . is not premised on the ownership of a fax machine."); ***Chapman***, 747 F.3d at 491 ("But what the Act prohibits is faxing unsolicited fax advertisements 'to a telephone facsimile machine.' . . . There is no mention of ownership."). Rather, the recipient is the person or entity that gets the fax. *See* **§ 227(b)(3)** (authorizing a private right of action to a "person or entity" for actual monetary loss or statutory damages due to a violation).

The best objective indicator of the "recipient" of a fax is the person who subscribes to the fax number. *See* **§ 227(b)(1)(C)(ii)(I)** (outlining an exception when

-7-

the sender "obtained the *number* of the telephone facsimile machine through . . . voluntary communication of such *number*, within the context of such established business relationship, from the *recipient* of the unsolicited advertisement") (emphasis added). True, the subscriber to the fax number may not be the recipient of the fax. However, fax logs showing the numbers that received each fax are objective criteria that make the recipient clearly ascertainable. *See* ***American Copper***, 757 F.3d at 545 (finding that "the record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement"); ***Chapman***, 747 F.3d at 492 (affirming class certification in a TCPA class action involving 10,145 persons and explaining that recipients "of faxes who don't have rights under the [TCPA] just wouldn't be entitled to share in the damages awarded to the class by a judgment or settlement"). Because the proposed class is clearly ascertainable, the district court abused its discretion in denying class certification.

## C.

The district court ruled in a footnote that Sandusky cannot meet the commonality and predominance requirements of Rule 23(a)(2) and (b)(3). The district court also expressed serious reservations about the adequacy of class counsel and Sandusky as lead plaintiff. MedTox requests that this court affirm the denial of class certification on these grounds.

A district court must undertake a rigorous analysis to ensure that the requirements of Rule 23 are met. ***Bennett v. Nucor Corp.***, 656 F.3d 802, 814 (8th Cir. 2011). Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." **Fed. R. Civ. P. 23(a)(2)**. The "common contention" in Rule 23(a)(2) "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." ***Wal-Mart Stores, Inc. v. Dukes***, 131 S. Ct. 2541, 2551 (2011). In addition to Rule 23(a)(2),

"questions of law or fact common to class members must predominate over any questions affecting only individual members." **R. 23(b)(3)**. "At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence. . . . If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Avritt*, 615 F.3d at 1029. Incorporating its analysis of ascertainability, the district court noted that, due to the individual issues presented, the class also cannot meet the commonality or predominance requirements.

The class here meets the commonality and predominance requirements of Rule 23. A common contention, capable of classwide resolution, is whether class members received an unsolicited fax advertisement violating the TCPA. *See Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients."). The questions of law (such as, whether the fax violates the TCPA) predominate, as do the questions of fact (such as, whether a class member received the unsolicited fax). The district court abused its discretion in holding that the class here does not meet the commonality and predominance requirements of Rule 23(a)(2) and (b)(3).[2]

\* \* \* \* \* \* \*

The district court's denial of class certification is reversed, and the judgment for MedTox vacated. *See Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir. 1996) (stating that judgment "should be entered against a putative class representative on a defendant's offer of payment only where class certification has

---

[2]The district court's serious reservations about counsel and the lead plaintiff do not appear to be an alternative holding, which this court need not address.

been properly denied . . . .").  The case is remanded for proceedings consistent with this opinion.

_____