Kristine G. Baker, United States District Court Judge
Before the Court is defendants Rudolf Galan, Adriana Galan, and Crystal Queen, Inc.'s (collectively, "Crystal Defendants") motion to strike class allegations (Dkt. No. 59). Plaintiff McCall Law Firm, PLLC ("McCall") timely filed its response to the motion (Dkt. No. 64). For the reasons set forth below, the Court denies the Crystal Defendants' motion.
I. Relevant Background
McCall is a law firm located in Pope County, Arkansas (Dkt. No. 4, ¶ 1). Individual defendants Mr. and Ms. Galan are residents of Ontario, Canada. On January 30, 2015, McCall originally filed this action against Crystal Queen, Inc., d/b/a Crystal Training, a Canadian corporation, in the Circuit Court of Pope County, Arkansas (Dkt. No. 1, ¶ 1). On September 21, 2015, McCall filed its amended class action complaint in that court to add defendants Mr. and Ms. Galan (See id. ). On December 3, *1128 2015, Crystal Training removed the case to this Court with the consent of separate defendants Mr. and Ms. Galan (Id. , Exhibit 2).
McCall's amended class action complaint alleges that all defendants violated the Telephone Consumer Protection Act of 1991 ("TCPA"), codified at 47 U.S.C. § 227, by purposefully transmitting an unsolicited advertisement by facsimile to a telephone facsimile machine belonging to McCall located in Pope County, Arkansas (Dkt. No. 4). McCall alleges that the unsolicited facsimile advertised computer software training sessions (Id. ). On March 10, 2016, Mr. and Ms. Galan filed separate motions to dismiss (Dkt. Nos. 21, 23). The Court denied both motions to dismiss (Dkt. No. 36).
After their motions to dismiss were denied by the Court, Mr. and Ms. Galan filed their answers to the amended class action complaint (Dkt. Nos. 41, 42). In their answers, Mr. and Ms. Galan both asserted multiple affirmative defenses, including lack of standing, constitutional violations, and class defects (Id. ).
Counsel for all defendants filed a motion to withdraw as counsel on October 3, 2017 (Dkt. Nos. 55, 56). In the same motion, counsel informed the Court that a motion to strike class allegations was imminent (Id. ¶¶ 3-4). The Court granted the motions to withdraw and directed Mr. and Ms. Galan to inform the Court whether they would proceed pro se ; the Court also directed Crystal Training to procure new counsel or risk a default judgment (Dkt. No. 58, at 2).
Former counsel for Crystal Defendants, Ms. Wymore, filed the present motion to strike class allegations (Dkt. No. 59) on October 24, 2017. Neither the Galans nor Crystal Training have informed the Court about their future plans for acquiring legal representation.
II. Standard of Review
The present motion is styled as a motion to strike, which is governed by Federal Rule of Civil Procedure 12(f). As an initial matter, the Court notes that "striking a party's pleadings is an extreme measure, and, as a result ... motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted." Stanbury Law Firm v. I.R.S. , 221 F.3d 1059, 1063 (8th Cir. 2000) (internal quotation and citation omitted). Per Rule 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A district court has "liberal discretion" when deciding whether to strike any portion of a pleading pursuant to Rule 12(f). Stanbury , 221 F.3d at 1063. According to a leading treatise,
[There] appears to be a general judicial agreement, as reflected in the extensive case law on the subject, that [motions to strike] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action. Any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party.
5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed. 2009).
The Court construes the Crystal Defendants' standing and constitutional arguments as a motion for judgment on the pleadings pursuant to Rule 12(c). See Fed. R. Civ. P. 12(h) (noting that "a defense of failure to state a claim ... may be made *1129 ... by motion for judgment on the pleadings").
A court will grant a Rule 12(c) motion for judgment on the pleadings if a plaintiff has "[f]ailed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(h)(2)(C). A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss. NanoMech, Inc. v. Suresh , 777 F.3d 1020, 1023 (8th Cir. 2015). When considering a motion for judgment on the pleadings, the Court must accept as true "all factual allegations set out in the complaint and must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor." See Wishnatsky v. Rovner , 433 F.3d 608, 610 (8th Cir. 2006). The plaintiff must make sufficient factual allegations to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint must contain enough facts to state a claim that is plausible on its face, not merely conceivable. Id. at 570, 127 S.Ct. 1955. "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." See id.
III. Discussion
A. McCall Has Alleged A Concrete Injury-In-Fact
Relying upon the recent decision from the Supreme Court, Spokeo, Inc. v. Robins , --- U.S. ----, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), the Crystal Defendants argue that McCall has not alleged a harm that satisfies Article III's injury-in-fact requirement and therefore McCall lacks standing to bring this suit (Dkt. No. 60, at 3). The Court construes this argument as a motion for judgment on the pleadings. The Court disagrees and finds that McCall has standing to bring the present TCPA action.
Standing is a jurisdictional issue, so the Court addresses it first. In order to establish standing, McCall "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo , 136 S.Ct. at 1547 (citing Lujan v. Defenders of Wildlife , 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations omitted) ). McCall bears the burden of establishing these elements. Id.
Per Spokeo , Article III standing requires a "concrete" injury, rather than a "conjectural or hypothetical" one. Spokeo , 136 S.Ct. at 1548 (citing Lujan , 504 U.S. at 560, 112 S.Ct. 2130 ). A plaintiff must establish that it has suffered " 'an invasion of a legally protected interest' that is concrete and particularized' and 'actual or imminent, not conjectural or hypothetical' " Id. at 1548 (citing Lujan , 504 U.S. at 560, 112 S.Ct. 2130 ). An injury is "particularized" if it affects the plaintiff "in a personal and individual way," while "concreteness" requires that an injury be "de facto," or in other words, the injury must actually exist. Id. at 1548. The Supreme Court recognized that Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate" to create standing. Spokeo , 136 S.Ct. at 1549 (emphasis in original). The Court acknowledged that not all violations of a statute constitute a "concrete" injury, as a "bare procedural violation, divorced from any concrete harm," is not a judiciable harm. Id.
The Court also reaffirmed that "intangible injuries" can qualify as "concrete injuries." Id. To determine whether an intangible injury is concrete, the Court *1130 noted that there are two important considerations: historical practice and Congressional judgment. Id. First, the Court looks to "historical practice," as it is "instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Id. (internal citations omitted). Second, the Court explained that "[Congress'] judgment is also instructive and important" because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." Id. However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. (emphasis in original).
In some cases, a statutory violation by itself may not qualify as a "concrete" injury. For example, the plaintiff in Spokeo alleged that the defendant published inaccurate information about him in violation of the Fair Credit Reporting Act ("FCRA"). The Court noted that although this was a technical violation of the plaintiff's rights, it may have resulted "in no harm." Id. at 1550. The Court remanded because the lower court did not separately analyze "whether this statutory violation of FCRA actually harmed the plaintiff ...." Id. The Court did, however, suggest that other statutory violations might present an inherent "risk of real harm" such that the violation would be sufficient, by itself, to constitute a concrete injury-in-fact. Id. at 1549. In any event, a standing analysis "requires a concrete injury even in the context of a statutory violation." Id.
The Crystal Defendants argue that the injuries McCall seeks to vindicate through the TCPA would be "too de minimis to give rise Article III standing." (Dkt. No. 60, at 2). The Court interprets this as an argument that the harm alleged by McCall does not qualify as "concrete" under Spokeo. For support, the Crystal Defendants cite Hernandez v. Path, Inc. , No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012), a case where the alleged harm-depletion of two to three seconds of battery capacity-was found to be insufficient to confer Article III standing. Hernandez , 2012 WL 5194120, at *2 ; see also Skaff v. Meridien N. Am. Beverly Hills, LLC , 506 F.3d 832 (9th Cir. 2007) (concluding that the brief inability to use hotel shower was "too trifling" to confer standing); LaCourt v. Specific Media, Inc. , No. SACV 10-1256-GW(JCGx), 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (holding that loss of ability to delete cookies does not confer standing). The Court notes, however, that none of the authorities cited in support of the Crystal Defendants' position deal with statutory causes of action, nor do any of those cases address whether a violation of the TCPA's facsimile advertisement ban constitutes a "concrete" injury.
Several courts have found that statutory violations of the TCPA constitute "concrete" injuries that confer Article III standing. See e.g. , Progressive Health and Rehab Corp. v. Strategy Anesthesia, LLC , 271 F.Supp.3d 941 (S.D. Ohio 2017) (determining that one impermissible fax creates a concrete injury); Physician's Healthsource, Inc. v. Vertex Pharmaceuticals Incorporated , 247 F.Supp.3d 138 (D. Mass. 2017) (holding that unsolicited faxes in violation of TCPA conferred standing after Spokeo ); Swetlic Chiropractic & Rehabilitation Center, Inc. v. Foot Levelers, Inc. , 235 F.Supp.3d 882 (S.D. Ohio 2017) (concluding that firm suffered concrete injury based upon receipt of unsolicited faxes);
*1131 O.P. Schuman & Sons v. DJM Advisory Grp. LLC , CIVIL ACTION No. 16-3563, 2017 WL 634069 (E.D. Pa. Feb. 16, 2017) (determining that single page fax transmission is sufficient to establish concrete and particularized harm).
Construing the pleadings liberally, the Court finds that McCall has alleged a concrete injury-in-fact sufficient to confer Article III standing. Actions to remedy a nuisance or an invasion of privacy have long been heard by American courts. See Restatement (Second) of Torts § 652(B) (Am. Law Inst. 1977). The legislation itself and the legislative records surrounding the enactment of the TCPA demonstrate that Congress intended to protect citizens from the loss of their fax machines during the transmission of unsolicited facsimile advertisements. See Pub. L. 102-243, § 2 ¶ 12; H.R. Rep. No. 102-317, at 10 (1991). The TCPA creates a substantive right to be free from unsolicited facsimile advertisements. Congress identified such advertisements as a concrete harm and provided citizens with a means to redress that harm. This Court defers to Congress's judgment to elevate this "concrete, de facto injur[y] previously inadequate in law" to the status of a legally cognizable injury. Spokeo , 136 S.Ct. at 1549 (quoting Lujan , 504 U.S. at 578, 112 S.Ct. 2130 ).
The statutory violation alleged by McCall in this matter is not "a bare procedural violation, divorced from any concrete harm." See Spokeo , 136 S.Ct. at 1549. The Supreme Court made it clear in Spokeo that the bare violation of a statute conferring a procedural right might not rise to the level of a concrete injury. Unlike the statute at issue in Spokeo , the TCPA section at issue here does not require procedures to reduce a congressionally-identified risk. Rather, Section 227 of the TCPA prohibits sending unsolicited advertisements to a facsimile machine. 47 U.S.C. § 227(b). Congress clearly intended to grant citizens a substantive , not procedural, right to be free from such advertisements. McCall alleged that it received, "on its fax machine," a "fax transmission" of an unsolicited advertisement from the Crystal Defendants (Dkt. No. 4, ¶ 14). Thus, construing these allegations liberally under Rule 12(c), McCall alleged a concrete injury-in-fact sufficient to confer Article III standing. Thus, the Court finds that McCall's complaint survives the Crystal Defendants' standing challenge.
B. Striking McCall's Class Allegations Is Premature
The Crystal Defendants urge this Court to strike McCall's class allegations "because [McCall] cannot meet the requirements of Rule 23(a)(2)-(4)" and because "[McCall] cannot establish that a class action is the superior method of adjudicating this controversy under Rule 23(b)(3)." (Dkt. No. 60, at 6). At this time, the Court declines to strike McCall's class allegations.
While Federal Rule of Civil Procedure 23(c)(1)(A) requires that the Court determine whether to certify a class "[a]t an early practicable time," the "propriety of class action status can seldom be determined on the basis of pleadings alone." Walker v. World Tire Corp., Inc. , 563 F.2d 918, 921 (8th Cir. 1977) (internal citations omitted). "Where ... the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue." Id. ; see Knowles v. Standard Fire Ins. Co. , No. 4:11-cv-04044, 2013 WL 6497097, at *3 (W.D. Ark. Dec. 11, 2013) ("[T]he Court recognizes that Plaintiff has not had the opportunity to take any meaningful discovery on class certification issues, and the Court is therefore hesitant to issue an order foreclosing the possibility of any *1132 class-wide remedy at this stage of litigation."). On the other hand, the Supreme Court has noted that "[s]ometimes the issues [in a putative class action] are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiffs' claims." General Telephone Co. of Southwest v. Falcon , 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ; see Joseph M. McLaughlin, McLaughlin on Class Actions § 3.4 (14th ed. 2012) ("[M]otions to strike should not be the norm, but are appropriate where the unsuitability of class treatment is evident on the face of the complaint and incontrovertible facts.").
The Crystal Defendants argue that McCall's class allegations should be struck because mini-trials will be required to determine liability for each class member and because the Crystal Defendants are insolvent and therefore judgment proof (Dkt. No. 60, at 6-8). Specifically, the Crystal Defendants argue that McCall cannot establish that each class member suffered a common injury-receiving an unsolicited fax advertisement-without conducting a mini-trial for each recipient of each fax sent by the Crystal Defendants to determine which faxes were unsolicited. Id. McCall responds that its class claims should not be stricken because "the Plaintiff and the class members all received a fax advertising the availability of Defendants' training classes." (Dkt. No. 64, at 18). Furthermore, McCall claims "there is publicly-available evidence" which supports its class allegations, though no citation to such evidence is provided (Id. at 16). Therefore, according to McCall, the "commonality" and "typicality" requirements of Rule 23(a) are satisfied (Id. at 17).
The Eighth Circuit Court of Appeals recently reversed a district court's denial of class certification in a case where the proposed class members received unsolicited fax advertisements without an opt-out notice. Sandusky Wellness Center, LLC v. Medtox Scientific, Inc. , 821 F.3d 992, 998 (8th Cir. 2016). The appeals court held that a class of individuals who allegedly received unsolicited fax advertisements in violation of the TCPA met the ascertainability, commonality, and predominance requirements of Rule 23. Id. at 998. The "common contention" that satisfied Rule 23(a)(2)'s commonality requirement was whether "class members received an unsolicited fax advertisement ...." Id. The same court held that questions of law, including whether the fax violated the TCPA, and questions of fact, including whether a class member received an unsolicited fax, predominated over any individual questions of law or fact, so Rule 23(b)(3) was satisfied. Id.
With this precedent in mind and after examining the pleadings, it appears, construing McCall's complaint liberally, that McCall has alleged facts sufficient to survive the present motion to strike class allegations. The second amended complaint claims that, on January 15, 2016, McCall received an unsolicited fax transmission on its fax machine "advertising Crystal Training's upcoming QuickBooks and Excel Training Classes ...." (Dkt. No. 4, ¶ 14 (internal quotation omitted) ). McCall argues that the fax advertisement in question did not contain an "Opt-Out Notice that complies with the requirements of 47 C.F.R. 64.1200(a)(4)(iii) and (iv)." (Id. ¶ 16). McCall claims that, "[u]pon information and belief," the Crystal Defendants sent identical fax transmissions "to hundreds, if not thousands, of telephone facsimile machines ...." (Id. ¶ 22).
McCall's alleged class is similar to the one alleged in Sandusky : the proposed class consists of individuals who received unsolicited facsimile advertisements without an opt-out notice. Rule 23(a)(2)'s commonality *1133 requirement appears, construing the pleadings liberally, to be satisfied because each class member allegedly received an unsolicited fax advertisement without an opt-out notice. Rule 23(b)(3)'s predominance requirement is met because McCall's complaint raises questions of law, including whether each fax violates the TCPA, and fact, including whether each class member received an unsolicited fax, that predominate over individual issues. McCall also sufficiently alleges facts regarding the numerosity and adequacy requirements of Rule 23(a). While the Crystal Defendants' arguments are well-taken, given McCall's allegations and the procedural posture of this case, the Court is not satisfied that it is appropriate to deny class certification at this time. Instead, the Court will allow McCall to proceed with discovery to develop the factual issues. Accordingly, the Court denies the Crystal Defendants' Rule 12(f) motion to strike class allegations.
C. The TCPA's Damages Provision Is Constitutional
The Crystal Defendants contend that the TCPA's damages provision violates the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. The Court construes these arguments as a motion for judgment on the pleadings. The Court declines to find the TCPA's damages provision unconstitutional at this stage of the litigation.
1. It Is Premature To Rule On The Crystal Defendants' Eighth Amendment Argument
The Crystal Defendants argue that the TCPA's remedy violates the Eighth Amendment of the United States Constitution because it is grossly excessive and disproportionate (Dkt. 60, at 12-14). Under Section 227(b), "[a] person or entity" may bring an action to recover the greater of either the "actual monetary loss" from a violation of § 227(b) or "to receive $500 in damages for each such violation." 47 U.S.C. § 227(b)(3)(B). Damages for each transmission may be trebled to $1,500 per violation if the Court finds that the Crystal Defendants knowingly or willfully violated the TCPA. 47 U.S.C. § 227(b)(3)(C). At this time, the Court declines to rule on this issue, as this is currently an individual action and the possibility of a constitutionally excessive award is low. The appropriate time for a ruling on this matter is later, if and after a class is certified. See Murray v. GMAC Mortg. Corp. , 434 F.3d 948, 953-54 (7th Cir. 2006).
2. The TCPA's Damages Provision Is Not Facially Unconstitutional
The Crystal Defendants attack the damages provision of the TCPA under the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution (Dkt. No. 60, at 10-12). At the outset, the Court notes that the Fourteenth Amendment's protections do not govern the TCPA, which is a federal statute. See Bolling v. Sharp , 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954) ("[T]he Fourteenth Amendment ... applies only to the states."). Because damages to the putative class in this case are not yet ascertainable with any degree of certainty, the Court treats the Crystal Defendants' Fifth Amendment argument as a facial, rather than as-applied, challenge to the damages provision of the TCPA.
At this stage of the litigation, the Crystal Defendants' due process challenge must fail. Due process rights are violated by statutory penalties only where the penalty prescribed is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable."
*1134 Warner Bros. Entertainment, Inc. v. X One X Productions , 840 F.3d 971, 977 (8th Cir. 2016) (quoting St. Louis, I.M. & S. Ry. Co. v. Williams , 251 U.S. 63, 66-67, 40 S.Ct. 71, 64 L.Ed. 139 (1919) ). The Crystal Defendants argue that the "TCPA's structure of fines" ranges from "10,000 to 30,000 times" the actual harm caused by the unsolicited facsimile advertisement (Dkt. No. 60, at 12). Pointing to cases overturning punitive damages awards as excessive, the Crystal Defendants contend that the TCPA's damages provision is unconstitutional.
Unfortunately for the Crystal Defendants, the Eighth Circuit has found that the guidelines governing the constitutionality of punitive damages awards are not applicable to statutory damages awards. Capital Records, Inc. v. Thomas-Rasset , 692 F.3d 899, 907 (8th Cir. 2012). Furthermore, other courts have rejected facial due process challenges to the damages provision of the TCPA. See Golan v. Veritas Entertainment, LLC , No. 4:14CV00069 ERW, 2017 WL 3923162 (E.D. Mo. Sept. 7, 2017) ; Krakauer v. Dish Network, LLC , 1:14-CV-333, 2017 WL 2455095 (M.D. N.C. Jun. 6, 2017) ; Maryland v. Universal Elections, Inc. , 862 F.Supp.2d 457, 465 (D. Md. 2012) ; Pasco v. Protus IP Sol., Inc. , 826 F.Supp.2d 825 (D. Md. 2011) ; Green v. Anthony Clark Int'l Brokers, Ltd. , No. 09 C 1541, 2010 WL 431673 (N.D. Ill. Feb. 1, 2010). Courts are perhaps hesitant to strike down the TCPA's statutory penalties because Congress possesses "a wide latitude of discretion to prescribe penalties for violations of [its] laws, and those penalties, which often serve a deterrent effect, are to be considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence [to the law]." Williams , 251 U.S. at 66-67, 40 S.Ct. 71. While the Crystal Defendants' liability under the TCPA is theoretically unlimited, this is an intended characteristic of Congress's damages scheme under the TCPA. Therefore, the Court declines to strike down the damages provision of the TCPA as unconstitutional.
Based upon the limited pleadings and filings in this case, the Court is not satisfied that the TCPA's statutory damages provision violates the Due Process clause of the Fifth Amendment. After a class is certified or damages are determined, if that occurs, the Crystal Defendants will have the opportunity to show that the statutory damages are in fact "so severe and oppressive" as to be unconstitutional.
D. The TCPA's Damages Provision Does Not Violate The First Amendment
The Crystal Defendants also argue that the "size of the penalties that can be imposed on speech" under the TCPA violate the First Amendment of the United States Constitution (Dkt. No. 60, at 14). Under controlling Eighth Circuit precedent, the Crystal Defendants' challenge to the TCPA must fail. See Missouri ex rel. Nixon v. American Blast Fax, Inc. , 323 F.3d 649 (8th Cir. 2003).
In Missouri ex rel. Nixon , the Eighth Circuit held that the TCPA's ban on unsolicited facsimile transmissions was a constitutional regulation of commercial speech under the Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York test. 323 F.3d 557, 660, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Under Central Hudson :
[W]e ask as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech is not protected by the First Amendment. If the speech concerns lawful activity and is not misleading, however, we next ask "whether the asserted governmental interest is substantial." If it is, then we "determine whether the regulation directly advances the governmental *1135 interest asserted," and finally, "whether it is not more extensive than is necessary to serve that interest." Each of these latter three inquires must be answered in the affirmative for the regulation to be found constitutional.
Thompson v. W. States Med. Ctr. , 535 U.S. 357, 367, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002) (quoting Central Hudson , 447 U.S. at 566, 100 S.Ct. 2343 ).
First, the court in Missouri ex rel. Nixon held that the TCPA serves a substantial government interest by "restricting unsolicited fax advertisements in order to prevent the cost shifting and interference such unwanted advertising places on the recipient." Id. at 654. Second, the Eighth Circuit found that the TCPA directly advanced this interest because it "plac[es] restrictions on those responsible for a large portion of the problem ...." Id. at 658. On the third Central Hudson prong, the Eighth Circuit pronounced that the TCPA achieved a "reasonable fit between the means it adopts and the ends it seeks to serve." Id. at 660. Missouri ex rel. Nixon is binding authority, and the Court follows that decision. The Court notes similar decisions by other circuit courts, including Destination Ventures, Ltd. v. FCC , 46 F.3d 54 (9th Cir. 1995), and Patriotic Veterans, Inc. v. Zoeller , 845 F.3d 303 (7th Cir. 2017).
The Crystal Defendants argue that "[t]he TCPA's draconian remedial provisions and wildly disproportionate damages chill protected speech ...." (Dkt. No. 60, at 14). The Court interprets this as an argument that the TCPA's damages provision violates the third prong of the Central Hudson test. The Court disagrees. The Crystal Defendants are essentially arguing that Congress should have adopted a less restrictive alternative remedy. Central Hudson does not require that Congress adopt the least restrictive possible remedy. See Thompson , 535 U.S. at 368, 122 S.Ct. 1497. Rather, when adopting a content neutral regulation of commercial speech, the regulation must only be "reasonable." Florida Bar v. Went For It, Inc. , 515 U.S. 618, 632, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995).
The TCPA's goal of preventing the cost shifting of fax advertising reasonably fits with the TCPA's remedy - a ban on unsolicited facsimile advertising - as advertisers may still legally use telephone solicitation, direct mail, or in-person solicitation. See Missouri ex rel. Nixon , 323 F.3d at 659. While Congress could have enacted a less restrictive regulation, such as a "do not fax list," it instead created a scheme that places the burden of unsolicited facsimile advertisements upon senders, rather than on consumers. Id. This Court is persuaded that Congress's damages provision under the TCPA reasonably "fits" the goals of the TCPA. Accordingly, the Court holds that, on its face, the TCPA's ban on facsimile advertisements is a constitutional regulation of commercial speech. Based on the limited pleadings and filings in this case, the Court is not satisfied that the hypothetical damages the Crystal Defendants face under the TCPA violate the First Amendment.
IV. Conclusion
For the reasons set forth herein, the Court denies (1) the Crystal Defendants' motion to strike class allegations and (2) the other relief sought by the Crystal Defendants, which the Court construes as motions for judgment on the pleadings.
So ordered this the 20th day of September, 2018.